IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


C. RICHTER TAYLOR, JR.,                )
                    Plaintiff,         )
                                       )
         vs                            )        Civil Action 07-724
                                       )
UNUM LIFE INSURANCE COMPANY OF         )
AMERICA and BUCHANAN INGERSOLL,        )
P.C. WELFARE BENEFITS PLAN,            )
                    Defendants.        )


REPORT AND RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the defendants' motion to dismiss the

complaint (Document No. 9) be granted.  In light of this recommendation, it is also

recommended that the defendants' motion to strike the plaintiff's jury demand (Document No. 6)

be dismissed as moot.

II. Report:

Presently before the Court is a motion to dismiss the complaint submitted by the

defendants, as well as their motion to strike the plaintiff's jury demand.   For reasons discussed

below, the defendants' motion to dismiss should be granted.  In light of this recommendation, the

defendants' motion to strike the plaintiff's jury demand should be dismissed as moot.

Plaintiff C. Richter Taylor, Jr., formerly an attorney with Buchanan Ingersoll, P.C.

("B.I."), commenced this action against defendants Unum Life Insurance Company of America

("Unum") and B.I.'s Welfare Benefits Plan (the "Plan"), alleging that they wrongfully denied

him long term disability benefits to which he was entitled as a participant in the Plan.  Since the plaintiff's claim for benefits arises pursuant to an employee benefit plan, it comes under the auspices of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., for which the Court has federal question jurisdiction.

It is alleged in the complaint that from 1966 until February 1981, the plaintiff was an attorney at the law firm of Moorhead & Knox; that in February 1981, Moorhead & Knox merged into B.I., at which time the plaintiff became a shareholder at B.I.; that while working at B.I., the plaintiff occasionally displayed irrational, erratic behavior and experienced significant mood swings; that he attended therapy sessions with a psychologist to address his behavior; and that during this period, the plaintiff did not know that he had any medical, psychological or psychiatric condition.

The plaintiff contends that by the late 1980's, his episodes of erratic behavior and mood swings became more frequent, and other attorneys at B.I. noticed a significant decrease in his job performance; that on December 31, 1989, his employment at B.I. was terminated; but that prior to his departure from B.I., B.I. established the Plan to provide long term disability benefits to its partners and employees, and B.I. purchased a "Group Long Term Disability Insurance Policy" from Unum which provided disability insurance coverage to B.I.'s attorneys and employees effective August 1, 1989 ("Unum's policy") .

The plaintiff asserts that upon leaving B.I., he became a partner in the law firm of Cindrich & Titus, later renamed Titus & McConomy (collectively, "T.M."); that his behavior at T.M. became increasingly erratic and impulsive, and he had frequent unexplained absences which caused his job performance to decline; that in 1994, he began psychological treatment with

Dr. Learita Scott which continued during his tenure with T.M.; that during this time, he was never diagnosed with, nor had any knowledge of a medical, psychological or psychiatric condition that caused his erratic behavior and declining job performance; and that in late 1995, his employment at T.M. was terminated.

The plaintiff further contends that in 1996, he joined the law firm of Houston Harbaugh, P.C., ("H.H."), but his tenure there was marked by erratic behavior, and he was unable to adequately perform his duties; that during his tenure with H.H., he continued his psychological counseling with Dr. Scott, and he also began to see a psychiatrist; that he was prescribed medications to counter certain symptoms he was experiencing, but during this time, he was not diagnosed with, nor had any knowledge of a medical, psychological or psychiatric condition that caused his erratic behavior; and that in 1999, his employment at H.H. was terminated.

The plaintiff asserts that in 1999, following his departure from H.H., he was hired as an attorney by one last firm, Plummer Harty & Owsiany ("P.H.O."); that during his tenure there, he continued to display frequent episodes of erratic behavior and declining job skills; that while working at P.H.O., in 2000, he suffered a manic episode which his doctors believed was consistent with bipolar disorder; that he was placed on Lithium and Paxil to treat his symptoms, but the medications could not prevent his social skills and job performance from deteriorating; and that by 2001, his employment at P.H.O. was terminated, after which he did not practice law with any firm.

It is alleged in the complaint that on May 29, 2002, following a severe manic episode, the plaintiff was admitted to Western Psychiatric Institute and Clinic for in-patient treatment; that during this time, he was formally diagnosed with bipolar disorder, dysfunction of

the frontal lobe of his brain and sleep apnea; but that prior to such diagnosis, he did not realize that anything was wrong with him.

The plaintiff avers that after being diagnosed with bipolar disorder, he learned of the availability of coverage under Unum's policy; that on or about November 14, 2003, B.I. forwarded to Unum a long term disability claim form at his request, which notified Unum of his condition and provided relevant medical records; that in a letter dated December 5, 2003, Unum denied his claim for benefits on grounds that he was not "disabled" under terms of its policy, as he worked as an attorney for several years after his claimed date of disability, and because his notice and proof of claim were untimely; that he appealed Unum's denial of benefits, but in letters dated May 24, 2004 and June 16, 2004, Unum upheld its decision to deny him benefits; that he submitted a "claim reassessment" form to Unum on December 7, 2006; but that on or about March 28, 2007, Unum upheld the denial of his benefits, at which point he exhausted his administrative remedies under its policy.

On May 29, 2007, the plaintiff commenced this suit by filing a complaint against the defendants.  In his four-count complaint, the plaintiff asserts claims under ERISA for wrongful denial of benefits (Count I) and breach of fiduciary duties (Count II).  He also seeks a declaratory judgment that Unum's policy is ambiguous (Count III), and he sets forth a claim for breach of contract against Unum (Count IV).

In response to the complaint, the defendants have moved to dismiss it as untimely pursuant to F.R.Civ.P. 12(b)(6).  It is the defendants' position that under the "proof of claim" and "legal proceedings" provisions contained in Unum's policy, the plaintiff failed to file suit within the policy's limitation period.

4

In reviewing a motion to dismiss, all well-pleaded allegations of the complaint must be accepted as true and viewed in a light most favorable to the non-movant.  Estelle v. Gamble, 429 U.S. 97 (1976).  To survive a motion to dismiss, a complainant's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).  A complaint will be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face."  Id. at 1974.

Under Unum's policy[1], the "notice and proof of claim" provisions are set forth in Section VI, paragraph F (at p. L-GPP-2 of the policy).  They provide in relevant part as follows:

NOTICE AND PROOF OF CLAIM

1.  Notice

a.  Written notice of claim must be given to the Company within 30 days of the date disability starts, if that is possible. If that is not possible, the Company must be notified as soon as it is reasonably possible to do so.
....

2.  Proof

a.  Proof of claim must be given to the Company.  This must be done no later than 90 days after the end of the elimination period.[2]

b.  If it is not possible to give proof within these time limits,

_____

1.   Our review of Unum's policy does not convert the defendants' motion to dismiss to one for summary judgment, for "a defendant may supplement the complaint by adding exhibits such as public records and other indisputedly authentic documents underlying the plaintiff's claims."  Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir. 2003).

2.   Under Unum's policy, the "elimination period" means "a period of consecutive days of disability for which no benefit is payable... [which] begins on the first day of disability."  See, Section II of the policy (at p. L-DEF-1).  Here, the "elimination period" is 180 days.  See, Section I, paragraph 4 of the policy (at p. L-PS-1).

> it must be given as soon as reasonably possible.  But proof
> of claim may not be given later than one year after the time
> proof is otherwise required.
> ........

The defendants interpret the above provisions in the policy as affording the plaintiff 270 days (90 days beyond the 180-day elimination period) in which to provide proof of his claim.  If it was not possible to provide proof within that time, the policy permitted the plaintiff up to one additional year in which to provide proof.  Based on an alleged disability onset date of January 1, 1990, the plaintiff had until September 30, 1990 to file his proof of claim.[3]  If it was not possible to provide proof within that time, the plaintiff had an additional year -- until September 30, 1991 -- to provide his proof.  Here, the plaintiff did not give notice or proof of his claim until on or about November 14, 2003.

The "legal proceedings" provision of Unum's policy is set forth in Section VI, paragraph H (at p. L-GPP-3 of the policy).  It provides:

> LEGAL PROCEEDINGS
>
> A claimant or the claimant's authorized representative cannot start
> any legal action:
>
> 1.  until 60 days after proof of claim has been given; nor
> 2.  more than 3 years after the time proof of claim is required.

Based on this provision, the defendants aver that the plaintiff had three years from the date proof was required in which to file suit.  According to the defendants, since the plaintiff was required to give proof of his claim on September 30, 1991 at the latest, he had -- at most --

---

3.    It appears that the alleged disability onset date of January 1, 1990 is derived from the fact that the plaintiff's employment with B.I. was terminated on December 31, 1989.  The policy defines an "employee" as "a person in active employment with the employer".  See, Section II of the policy (at p. L-DEF-1).  The plaintiff does not contest the aforesaid disability onset date.

until September 30, 1994 in which to file suit.  Since the plaintiff did not commence this action until May 29, 2007, the defendants insist his complaint must be dismissed as untimely.

In opposing the defendants' motion to dismiss, the plaintiff asserts that the above provisions in Unum's policy are ambiguous and must be construed in his favor.  In arguing that an ambiguity exists, the plaintiff points to the fact that the policy fails to define the terms "notice", "notice of claim", "proof", and "proof of claim", which he believes confuses the requirements for complying with the policy's deadlines.  In accordance with his position, the plaintiff argues that the policy's deadlines for providing notice and proof of claim can reasonably be read as requiring notice and proof of claim only when it is "reasonably possible" to provide them.  In construing Unum's policy in this way, the plaintiff insists that he filed this suit in a timely manner, having submitted his notice and proof of claim as soon as reasonably possible.[4]

The Third Circuit Court of Appeals has stated that in construing an insurance policy, "[s]traightforward language" should be given its plain and "natural meaning"; however, "ambiguous terms should be strictly construed against the insurer", in favor of the insured. Lawson Ex. Rel. v. Fortis Ins. Co., 301 F.3d 159, 162 (3d Cir. 2002).  "A contract is ambiguous if it: (1) is reasonably susceptible to different constructions, (2) is obscure in meaning through indefiniteness of expression, or (3) has a double meaning." Id. at 163.  Also see, St. Paul Fire and Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431 (3d Cir. 1991), where the Court explained:

---

4.   In support of his claim that an ambiguity exists in Unum's policy, the plaintiff cites a case from the District of Massachusetts, Skipper v. Claims Services, Intern., 213 F.Supp.2d 4 (D.Mass. 2002).  The plaintiff's reliance on Skipper is misplaced, as the contract language in that case differed from the policy at issue here; further, the court in Skipper construed policy language which would "have the absurd result of terminating plaintiff's right to bring suit in 1991, when he was still receiving benefits." Id. at 7. Clearly, Skipper is not applicable here.

> Determining whether the terms of a contract are ambiguous
> is a question of law.  We have recognized a contract ambiguity
> to be 'intellectual uncertainty; the condition of admitting of
> two or more meanings, of being understood in more than one
> way, of referring to two or more things at the same time...
> In determining whether a contract term is ambiguous, we must
> consider the actual words of the agreement themselves, as well
> as any alternative meanings offered by counsel, and extrinsic
> evidence offered in support of those alternative meanings.  In
> making the ambiguity determination, however, we must remember
> that the language of the policy may not be tortured... to create
> ambiguities where none exist.

We find that the challenged provisions in Unum's policy are not ambiguous.  As Unum point out, the fact that the policy does not define a certain term, such as "notice" or "proof" of claim, "should not send the court scurrying to a dictionary hunting for ambiguity." See, Melrose Hotel Company v. St. Paul Fire and Marine Ins. Co., 432 F.Supp.2d 488, 501 (E.D.Pa. 2006).  Indeed, the plaintiff proffers no reason why such common terms should not be construed in accordance with their plain and ordinary meaning.

For instance, as defined in a dictionary, the term "notice" means in part an "indication or warning of something".  See, Webster's II New Riverside University Dictionary at 805.  Under Unum's policy then, it seems clear that the phrase "notice of claim" refers to a person's obligation to provide an "indication or warning" to Unum that he intends to submit a claim for disability benefits.  The term "proof" is defined in part as "evidence establishing the validity of a given assertion".  Id. at 942.  Thus, the phrase "proof of claim" in the policy clearly refers to evidence necessary to establish one's entitlement to disability benefits.  We find no ambiguity in the above terms which were not defined in the policy.

We also disagree with the plaintiff that the deadlines set forth in the policy are

8

reasonably susceptible to being read as requiring proof of claim and the commencement of legal proceedings only when it is "reasonably possible" to do so.  To the contrary, the terms of the policy unambiguously require a claimant to file proof of a claim "no later than 90 days after the end of the elimination period", which was 180 days.  If "it is not possible to give proof" within that time, proof "must be given as soon as reasonably possible.  But proof of claim may not be given later than one year after the time proof is otherwise required."  See, Section VI, paragraph F of the policy.

We see no ambiguity in the above provision.  The plaintiff had 270 days from the date of his disability in which to provide proof of a claim.  If it was not possible to provide proof within that time, the policy afforded him one additional year in which to provide proof.  Based on his alleged disability date of January 1, 1990, the plaintiff had until September 30, 1990 to file his proof of claim.  If it was not possible to provide proof within that time, the plaintiff had an additional year, or until September 30, 1991, in which to provide proof of claim.

Under the policy's unambiguous "legal proceedings" provision, the plaintiff had three years from the date proof was required in which to file suit.[5]  Since the plaintiff was required to provide his proof of claim on September 30, 1991 at the latest, he had until September 30, 1994 in which to file suit.  Having commenced this action on May 29, 2007, the plaintiff's complaint is untimely.

Therefore, it is recommended that the defendants' motion to dismiss the

---

5.    Certainly, contractual limitation of suit provisions, as here, are valid and enforceable.  See, Koert v. GE Group Life Assurance Co., 416 F.Supp.2d 319, 321-22 (E.D.Pa., 2005), aff'd., 2007 WL 595028 (3d Cir., Feb. 27, 2007), citing Fontana v. Diversified Group Adm'rs, Inc., 67 Fed. Appx. 722, 723-24 (3d Cir. 2003).

complaint (Document No. 9) be granted.[6]  In light of this recommendation, it is also recommended that the defendants' motion to strike the plaintiff's jury demand (Document No. 6) be dismissed as moot.

        Within thirteen (13) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

        Respectfully submitted,

        s/ ROBERT C. MITCHELL
        United States Magistrate Judge

Dated: September 7, 2007

---

6.   To the extent the plaintiff seeks leave to amend his complaint (as he alludes in his brief opposing the defendants' motion to dismiss), his request should be denied, as amendment would be futile.